# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### MONROE DIVISION

| | | |
|---|---|---|
| STEVEN L. SPILLMAN | * | CIVIL ACTION NO. 18-0647 |
| | | |
| vs. | * | JUDGE TERRY A. DOUGHTY |
| | | |
| JAY RUSSELL ET AL. | * | MAG. JUDGE KAREN L. HAYES |

## REPORT AND RECOMMENDATION

Before the undersigned Magistrate Judge, on reference from the District Court, is a motion for summary judgment filed by defendants Sheriff Jay Russell, Warden Pat Johnson, and Nurse Donna Norman ("Defendants"). [doc. # 39]. The motion is opposed. For reasons set forth below, it is recommended that the motion be **GRANTED IN PART** and **DENIED IN PART**.

## Background

Plaintiff Steven Spillman, proceeding pro se and *in forma pauperis*, is a former pretrial detainee at the Ouachita Correctional Center ("OCC") in Louisiana. He filed the instant suit pursuant to 42 U.S.C. § 1983, alleging that Defendants violated his constitutional rights by failing to provide him adequate medical care. [docs. # 1, 9]. Specifically, he alleges that prior to his incarceration at OCC, he re-ruptured the quadriceps tendon in his left leg on which he previously had surgery. He claims the medical staff at OCC was aware of his condition but Defendants delayed or failed to treat him, denied him medication, refused to send him to a specialist, and took away his leg brace [doc. # 9]. Plaintiff seeks damages for mental and

1

physical pain, an order instructing OCC to change its medical policies, and to be sent to a

hospital for surgery.[1]

On April 18, 2019, Defendants filed the instant motion for summary judgement pursuant

to Federal Rule of Civil Procedure 56. [doc. # 39]. Defendants claim Plaintiff's suit fails because

> Plaintiff has failed to show that he (1) had a serious medical need of which these
> Defendants had actual knowledge and to which these Defendants were
> deliberately indifferent, and (2) that the deliberate indifference was pursuant to
> the official policy of the Sheriff's office such that the policy caused Plaintiff's
> alleged harm.

[doc. # 39-1 at 1]. On May 8, 2019, Plaintiff filed a response, claiming summary judgment

should be denied because a genuine issue of material fact exists as to whether Defendants

provided proper medical care. [doc. # 46]. Defendants did not file a reply.

On June 20, 2019, the Court granted in part Plaintiff's March 22, 2019 motion to compel

discovery [doc. # 30] and ordered Defendants to produce OCC's policies concerning medical

care and sick call procedures, finding the policies "necessary to resolving Defendants' motion as

it relates to Plaintiff's" municipal liability claim. [doc. # 47]. The Court also granted Plaintiff

leave to file a supplement to his opposition, and permitted Defendants to file a reply. Plaintiff

filed a supplemental opposition. [doc. # 50]. Defendants did not file a reply.

### Standard of Law

Summary judgment is appropriate "if the movant shows that there is no genuine dispute

as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

---

[1] Plaintiff was released from OCC in August of 2018, [*see* doc. # 12], which moots his request for injunctive relief. *See Bean v. Mancuso*, No. CIV.A. 10-852-LC, 2011 WL 2746012, at *5 (W.D. La. June 17, 2011).

56(a). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under the applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact-finder could render a verdict for the nonmoving party. *Id.*

The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting *Anderson*, 477 U.S. at 247). The moving party may meet its burden "by pointing out that the record contains no support for the non-moving party's claim." *Stahl v. Novartis Pharm. Corp.*, 283 F.3d 254, 263 (5th Cir. 2002). If the nonmoving party is then unable to point to anything in the record to support its claim, summary judgment is appropriate. *Id.*

When considering the evidence in a motion for summary judgment, the court construes "all facts and inferences in the light most favorable to the nonmoving party." *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010). The court will resolve factual disputes in favor of the nonmoving party, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Alvarez v. City of Brownsville*, 904 F.3d 382, 389 (5th Cir. 2018). Rule 56 mandates the entry of summary judgment if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. In such a situation, there is "no genuine issue as to any material fact" because "a complete

failure of proof concerning an essential element of the nonmoving party's case necessarily

renders all other facts immaterial." *Id.* at 323.

**Discussion**

I.       **Deliberate Indifference Standard**

"The constitutional rights of a pretrial detainee flow from both the procedural and

substantive due process guarantees of the Fourteenth Amendment, . . . which provides that no

state shall "deprive any person of life, liberty, or property, without due process of law."

*Olabisiomotosho v. City of Houston*, 185 F.3d 521, 525–26 (5th Cir. 1999) (quoting U.S. CONST.

amend. XIV).

In analyzing constitutional challenges by pretrial detainees, courts first determine

whether to classify the "challenge as an attack on a 'condition of confinement' or as an 'episodic

act or omission.'" *Id.* at 526 (quoting *Scott v. Moore*, 114 F.3d 51, 53 (5th Cir. 1997)). A

condition of confinement case is an attack on the "general conditions, practices, rules, or

restrictions of pretrial confinement." *Scott*, 114 F.3d at 53. In contrast, "if the complained-of

harm is a particular act or omission of one or more officials, the action is characterized properly

as an 'episodic act or omission' case." *Flores v. Cty. of Hardeman, Tex.*, 124 F.3d 736, 738 (5th

Cir. 1997). Here, Plaintiff's suit turns on Defendants' alleged failure to provide him with medical

care, which fits the definition of an episodic act or omission. *See Olabisiomotosho*, 185 F.3d at

526 (finding Plaintiff's claims that Defendants failed "to take better care of her," "medically

screen her," and "secure her to treatment" perfectly fit "the definition of the episodic omission").

"In an episodic act or omission case, an actor is usually interposed between the detainee

and the municipality, such that the detainee complains first of a particular act of, or omission by,

4

the actor and then points derivatively to a policy, custom or rule (or lack thereof) of the

municipality that permitted or caused the act or omission." *Flores*, 124 F.3d at 738. To hold an

individual liable, the plaintiff "must establish that the official[] acted with subjective deliberate

indifference." *Id.* A prison official is not liable "unless the official knows of and disregards an

excessive risk to inmate health or safety; the official must both be aware of facts from which the

inference could be drawn that a substantial risk of serious harm exists, and he must also draw the

inference. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

To hold a municipality liable for an episodic act or omission, the plaintiff must

demonstrate that (1) a municipal employee violated plaintiff's "clearly established constitutional

rights with subjective deliberate indifference," as described above, and (2) "this violation

resulted from a municipal policy or custom adopted and maintained with objective deliberate

indifference." *Brumfield v. Hollins*, 551 F.3d 322, 331 (5th Cir. 2008) (quoting *Olabisiomotosho*,

185 F.3d at 528–29). "Under the second prong, the plaintiff must identify a policymaker and

show that an official policy is the 'moving force' behind the municipal employee's allegedly

unconstitutional act." *Id.* (citations omitted).

"Deliberate indifference is an extremely high standard to meet" and requires the plaintiff

to show that prison officials "refused to treat him, ignored his complaints, intentionally treated

him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard

for any serious medical needs." *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756

(5th Cir. 2001) (citations omitted). "Unsuccessful medical treatment, acts of negligence, or

medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement

with his medical treatment, absent exceptional circumstances." *Gobert v. Caldwell*, 463 F.3d

339, 346 (5th Cir. 2006). Further, "the decision whether to provide additional treatment is a

classic example of a matter for medical judgment." *Domino v. Texas Dep't of Criminal Justice*,

239 F.3d 752, 756 (5th Cir. 2001) (citations omitted). That a prisoner continues to suffer pain

despite receiving treatment likewise does not establish a constitutional violation. *Robertson v.*

*Davenport*, No. 2:11-CV-1419, 2012 WL 625660, at *4 (W.D. La. Jan. 23, 2012) (citing

*Mayweather v. Foti*, 958 F.2d 91, 91 (5th Cir. 1992)). However, "denial of recommended

medical treatment" and a "delay in medical treatment that results in substantial harm" can

constitute deliberate indifference. *Carlucci v. Chapa*, 884 F.3d 534, 538 (5th Cir. 2018)

## II.     Individual Liability

### A. Nurse Norman

Plaintiff alleges that the medical staff at OCC (1) delayed or would not treat his

condition; (2) did not provide him with adequate medication; (3) refused to send him to an

orthopedic specialist; and (4) took away his leg brace. [doc. # 9 at 3–4]. On review of the record,

construing the evidence in the light most favorable to Plaintiff, the undersigned finds that, as a

matter of law, the facts do not support a finding of deliberate indifference as it relates to items

(1)–(3).

The record reflects that OCC's medical staff was attentive to Plaintiff's medical needs

and treated him each time he submitted a request. The longest period of time Plaintiff waited to

receive treatment was six days, and Plaintiff has failed to allege how this delay caused

substantial harm. [*See* doc. # 39-5]. Plaintiff was also provided medication for his pain. [*See*

docs. # 39-5–39-6]. His contention that the medicine did not adequately treat his pain constitutes

a disagreement with his medical treatment, which does not equate to deliberate indifference.

6

Likewise, his claim that Defendants refused to send him to an orthopedic specialist does not establish a constitutional violation. Plaintiff submitted a grievance in compliance with OCC's Administrative Remedy Procedure, complaining that he needed surgery and OCC refused to send him to an orthopedic specialist. In response, Nurse Norman noted that she reviewed Plaintiff's medical records and his doctor recommended physical therapy and a leg brace but made no mention of surgery. [doc. # 27-3 at 1–2; *see* doc. # 27-1 at 36–42]. Further, Plaintiff was discharged from the orthopedic clinic in November 2017 because "no further orthopedic surgical care" was recommended. [doc. # 27-1 at 32]. Thus, OCC's subsequent refusal to refer Plaintiff to an orthopedic specialist did not constitute a denial of recommended medical treatment but rather a disagreement in the course of treatment.

However, the undersigned finds that denying Plaintiff his leg brace may constitute deliberate indifference. Plaintiff's medical records indicate that following his surgery in September 2017, Plaintiff's left leg was in a brace, and he was directed to wear the "knee immobilizer at all times." [doc. # 27-1 at 4, 10]. At follow up appointments, his doctor noted he was non-compliant with post-operative instructions and informed Plaintiff that he need to wear the knee immobilizer. (*Id.* at 19, 23). Plaintiff was still in a brace in January of 2018 when he was first incarcerated at OCC. [doc. # 27-3 at 24–25]. He was also instructed to continue wearing the brace in September of 2018, after he was released from OCC. [doc. # 27-2 at 48].

On his OCC intake form, Plaintiff indicated that he had surgery in has left leg in 2017 for a quadriceps tendon repair and his leg was in a brace. [doc. # 27-3 at 24–25]. Officials at OCC, including Nurse Norman, were aware of Plaintiff's injury and that he wore a brace, [*see id.* at 1–2], yet, according to Plaintiff, they took the brace away from him. Plaintiff claims to be harmed

7

by the removal of his brace: the brace was necessary to keep his leg stable and in place and its

removal prohibited movement and caused him severe pain. [doc. # 9 at 3–4].

Defendants do not dispute that Plaintiff's brace was taken from him or provide an

explanation for why it was confiscated. In fact, Defendants do not address the brace at all in their

motion. As the record currently stands, there is a genuine dispute concerning the decision to

remove the brace despite medical recommendations. Accordingly, summary judgment is not

appropriate as to this issue, and Defendants' motion as it relates to Plaintiff's deliberate

indifference claim against Nurse Norman for taking away his brace should be denied.

B. Sheriff Russell and Warden Johnson

Plaintiff claims that Sheriff Russell and Warden Johnson violated Plaintiff's

constitutional rights based on their supervisory positions at OCC. [*See* doc. # 9 at 1–2].

However, "it is well settled that supervisory officials may not be held liable under § 1983 under

the doctrine of respondeat superior." *Bean*, 2011 WL 2746012, at *4 (citations omitted). A

supervisor is held liable only if he (1) "affirmatively participates in the acts that cause the

constitutional deprivation"; or (2) "implements unconstitutional policies that causally result in

the constitutional injury." *Pena v. City of Rio Grande City*, 879 F.3d 613, 620 (5th Cir. 2018).

Plaintiff does not allege that these defendants were personally involved in his medical

care, or lack thereof, or that they even knew his brace was confiscated.[2] Accordingly, Plaintiff's

claims against them in their individual capacities should be dismissed.

---

[2] Plaintiff generalizes that Defendants deliberately "failed to treat, and continue to delay treatment." [doc. # 9 at 3]. To the extent this is an allegation of Sheriff Russell and Warden Johnson's personal involvement, these acts nevertheless do not constitute deliberate indifference. *See supra* Part II.A.

8

### III.    Municipal Liability

Plaintiff also appears to seek damages against Sheriff Russell and Warden Johnson based on the fact they are responsible for the "care, custody, and control" of OCC inmates and against Nurse Norman "as the final health care authority for OCC." [*See* doc. # 9 at 1]. To the extent that he is suing Defendants in their official capacities, a suit against a party in its official capacity is generally "another way of pleading an action against an entity of which an officer is an agent." *Goodman v. Harris Cty.*, 571 F.3d 388, 395 (5th Cir. 2009) (quoting *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 n.55 (1978)). Therefore, an official-capacity suit is treated as a suit against the real party in interest—the government entity—and not against the official personally. *Id.*

As discussed above, *supra* Part I, to establish municipal liability, Plaintiff must prove that any constitutional violation resulted from an official policy or custom promulgated by a final policymaker.[3] "State law determines whether a particular individual is a county or municipality final decision maker with respect to a certain sphere of activity." *Bennett v. Pippin*, 74 F.3d 578, 586 (5th Cir. 1996) (*citing City of St. Louis v. Praprotnik*, 485 U.S. 112, 124 (1988). "Under Louisiana law, it is the Sheriff's office that has the obligation to provide medical care for the prisoners. The Sheriff's office also controls the inmates of the jail, the employees of the jail, and the daily operation of the jail." *Jones v. St. Tammany Par. Jail*, 4 F. Supp. 2d 606, 613 (E.D. La. 1998); (citing La. R.S. §§ 13:5539, 15:704). Thus, Sheriff Russell, in his official capacity as

---

[3] Any municipal liability claim can only flow from the allegations against Nurse Norman related to her removal of Plaintiff's leg brace. As Plaintiff's other § 1983 claims fail, those claims against the government entity necessarily fail as well.

Sheriff of Ouachita Parish, is the appropriate governmental entity responsible for any constitutional violations committed at OCC. *See id.* at 614. As neither Warden Johnson nor Nurse Norman is the final policymaker, the official capacity claims against them should be dismissed.

An official policy can exist in various forms, including written policy statements, regulations, ordinances, or "widespread practice that is so common and well-settled as to constitute a custom that fairly represents municipal policy." *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 847 (5th Cir. 2009) (internal quotations omitted). Plaintiff may also establish a custom or policy exists by demonstrating (1) a pattern of unconstitutional conduct by municipal actors or employees; or (2) a single unconstitutional act by a final policymaker. *Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 169 (5th Cir. 2010). "A municipality is almost never liable for an isolated unconstitutional act on the part of an employee; it is liable only for acts directly attributable to it through some official action or imprimatur." *Peterson*, 588 F.3d at 847 (internal quotations omitted). For liability to attach, there must also be "a direct causal link between the municipal policy and the constitutional deprivation." *Piotrowski v. City of Houston*, 237 F.3d 567, 580 (5th Cir. 2001).

Here, Defendants contend that Plaintiff has failed to show any unconstitutional policy at the Sheriff's Office denying adequate medical attention. [doc. # 39-1 at 8]. Defendants submitted OCC's policies concerning medical care of pretrial detainees, [*see* doc. # 48], which, on review, the undersigned finds contain no policy to deny pretrial detainees medical care. Plaintiff has not pointed to anything in the record to suggest otherwise, and he has presented no evidence of a widespread practice, pattern of unconstitutional conduct, or single unconstitutional act by Sheriff

Russell. Plaintiff contends that Defendants failed to follow their own policies "in regard to proper medical care for a person in custody who suffered a known serious medical condition" [doc. # 50 at 3], but this suggests an isolated unconstitutional act for which there is no municipal liability. *See Peterson*, 588 F.3d at 847.

Based on the summary judgment evidence, there is no genuine dispute of material fact as to whether there existed an official policy or custom of denying medical care or that any policy was deliberately indifferent to the constitutional rights of pretrial detainees. Accordingly, summary judgment should be granted as to this claim.

<u>**Conclusion**</u>

For the foregoing reasons,

**IT IS RECOMMENDED** that Defendants' motion for summary judgment [doc. # 39] be **GRANTED IN PART** and **DENIED IN PART**.

**IT IS FURTHER RECOMMENDED** that the claims asserted against Sheriff Russell, Warden Johnson, and Nurse Norman in their official capacities be **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER RECOMMENDED** that the claims asserted against Sheriff Russell and Warden Johnson in their individual capacities be **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER RECOMMENDED** that Plaintiff's deliberate indifference claim against Nurse Norman for the failure to treat his condition, providing inadequate medication, and the refusal to send him to an orthopedic specialist be **DISMISSED WITH PREJUDICE**.

11

**IT IS FURTHER RECOMMENDED** that Defendants' motion be **DENIED** to the extent it seeks dismissal of Plaintiff's deliberate indifference claim against Nurse Norman for confiscating Plaintiff's leg brace.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and FRCP Rule 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before making a final ruling.

**Failure to file written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation within fourteen (14) days from the date of its service, shall bar an aggrieved party, except on grounds of plain error, from attacking on appeal the unobjected-to factual findings and legal conclusions accepted by the District Judge.**

In Chambers, Monroe, Louisiana, this 30th day of July 2019.

_____
KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE